622 P.2d 699

**Michael GARCIA, a minor, and Joseph V. and Louisa A. Garcia, guardians and next friends of Michael Garcia, Plaintiff-Appellants,**

v.

**ALBUQUERQUE PUBLIC SCHOOLS BOARD OF EDUCATION, aka, Albuquerque Public Schools, and Charles Otero, Defendants-Appellees.**

No. 4346.

Court of Appeals of New Mexico.

June 10, 1980.

Writ Quashed Jan. 27, 1981.

**392**

Richard E. Ransom, Smith, Ransom & Gilstrap, Albuquerque, for plaintiffs-appellants.

J. Duke Thornton, Deborah S. Davis, Shaffer, Butt, Thornton & Baehr, P. C., Albuquerque, John B. Pound, Montgomery, Andrews & Hannahs, P. A., Santa Fe, Carl H. Esbeck, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for defendants-appellees.

## OPINION

LOPEZ, Judge.

This case was brought in the District Court of Bernalillo County to recover damages for personal injuries suffered by a twelve year old student who was struck by his public school teacher. Because the New Mexico Tort Claims Act accords governmental immunity to the defendants, the Court dismissed the complaint. We affirm.

Plaintiffs assert the Tort Claims Act, § 41–4–1 *et seq.*, N.M.S.A.1978 violates Art. II, §§ 4 and 18 of the New Mexico Constitution and the 14th Amendment of the United States Constitution. They argue that the Tort Claims Act denies injured parties equal protection of the law since only those parties may recover damages who were injured by the negligence of state and public employees performing their duties in any of eight enumerated areas of governmental activity.

The Tort Claims Act reinstates governmental immunity, previously abolished by the New Mexico Supreme Court in *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1975), except in the eight following classes of activity: 1) the operation or maintenance of motor vehicles, aircraft, and watercraft; 2) the operation or maintenance of any building, public park, machinery, equipment or furnishings; 3) the operation of airports; 4) the operation of certain public utilities and services; 5) the operation of certain medical facilities; 6) health care services; 7) the maintenance and existence of highways, streets and certain appurtenances; 8) certain unlawful acts of law enforcement officers. Sections 41–4–5 through 41–4–12, N.M.S.A.1978. Plaintiffs argue that, rather than grant blanket immunity with specified exceptions, the Legislature should have enacted blanket liability with specified exceptions. They maintain that to disallow liability in most, but not all, of the areas of governmental activity is to discriminate arbitrarily among persons injured by a government entity or employee.

 We do not agree. The standards for violation of the equal protection clauses of the United States and New Mexican Constitutions are the same. *Anaconda Co. v. Property Tax Dept.*, 94 N.M. 202, 608 P.2d 514 (Ct.App.1979), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980). Unless the challenged statute trammels fundamental personal rights or is drawn upon inherently suspect classifications, such as race, religion, or alienage, the court presumes the constitutionality of the statutory discrimination and requires only that the classifica-

tion challenged be rationally related to a legitimate state interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). *See, Espanola Housing Authority v. Atencio*, 90 N.M. 787, 568 P.2d 1233 (1977); *McGeehan v. Bunch*, 88 N.M. 308, 540 P.2d 238 (1975); *Gruschus v. Bureau of Revenue*, 74 N.M. 775, 399 P.2d 105 (1965); *see also, Anaconda, supra*. If any state of facts can reasonably be conceived which will sustain the classification, the statute is valid. *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Atencio, supra*. Further, every presumption is in favor of the validity of legislative enactments. *Id.; McGeehan, supra*. The court will not enquire into the wisdom, policy, or justness of the legislation. *Id.* We cannot substitute our view in selecting and classifying for that of the legislature. *Michael J. Maloof & Co. v. Bureau of Revenue*, 80 N.M. 485, 458 P.2d 89 (1969).

In 1976, the Supreme Court of Kansas considered a case very similar to the one before us. After the courts had abolished sovereign immunity, the Kansas legislature, just like our own, reinstated it. Their law reimposed governmental immunity, but excepted certain governmental entities and local governments. In rejecting plaintiff's claim that the statutory scheme violated the equal protection clause of the 14th Amendment because it discriminated arbitrarily, the court aptly observed that any scheme which retained some governmental immunity would be discriminatory.

> Regardless of the classification scheme used by the courts or by the legislatures, if some immunity is retained certain persons injured by the government will recover, while others injured, to an equal or greater degree, will not recover. This allegedly discriminatory situation will occur whether the governmental immunity is based on the "governmental-propriety" distinction, the "discretionary-nondiscretionary" distinction, or an "open-ended" or a "close-ended" statute.

. . . . .

> [S]ome classification scheme is necessary, and . . . any classification scheme adopt-

ed is a policy decision. If the court declares the policy judgment made by the legislature ... unconstitutional, then any classification scheme which retains any governmental immunity is unconstitutional.

*Brown v. Wichita State University,* 219 Kan. 2, 18–19, 547 P.2d 1015, 1029, *appeal dismissed,* 429 U.S. 806, 97 S.Ct. 41, 50 L.Ed.2d 67 (1976).

Other courts, too, have refused to uphold constitutional challenges to legislative enactments of partial sovereign immunity on the basis of denial of equal protection. *Sullivan v. Midlothian Park District,* 51 Ill.2d 274, 281 N.E.2d 659 (1972); *Aubertin v. Board of County Commissioners,* 588 F.2d 781 (10th Cir. 1978). In California, Justice Traynor authored an opinion holding constitutional legislation which allowed suits, in certain circumstances, against public medical facilities, *unless* they were mental institutions. *County of Los Angeles v. Superior Court,* 62 Cal.2d 839, 44 Cal.Rptr. 796, 402 P.2d 868 (1965). The legislation was constitutional because a rational basis could be found for the classification. In both Michigan and Wisconsin, the courts have held that state law which applies sovereign immunity to some governmental functions, but not to others, does not offend the equal protection clause. *Anderson v. City of Detroit,* 54 Mich.App. 496, 221 N.W.2d 168 (1974); *Cords v. State,* 62 Wis.2d 42, 214 N.W.2d 405 (1974). Again, the statutes were upheld because there was a rational basis for the classification they employed.

■ The following reasons justify the Legislature's determination to partially retain governmental immunity: 1) There is a need to protect the public treasuries. Kovnat, *Torts: Sovereign and Governmental Immunity in New Mexico,* 6 N.M.L.Rev. 349 (1976). 2) Partial immunity enables the government and its various subdivisions to function unhampered by the threat of time and energy consuming legal actions which would inhibit the administration of traditional state activities. *Brown, supra.* 3) In order to effectively carry out its services, many of which are financially unprofitable

and which would not be provided at a reasonable cost by private enterprise, the government needs the protection provided by some immunity. *Id.*

Because, 1) any classification scheme involving sovereign immunity is a policy decision, *Brown, supra,* 2) it is not the function of the courts to dictate policy to the Legislature, *Maloof, supra,* and 3) the classification adopted offends no fundamental rights or suspect classes and there are rational bases for the reinstatement of partial sovereign immunity, we hold the Tort Claims Act does not violate the equal protection clauses of the United States and New Mexico Constitutions.

■ Plaintiffs next argue that the Tort Claims Act is arbitrary and unreasonable in granting immunity to certain public employees, but not to others, depending on the governmental activity in which they are engaged. Section 41–4–4 (A), N.M.S.A.1978 (Supp.1979). This is essentially the same argument that we just rejected. In waiving immunity for public employees on the same basis as for public entities, the Legislature is merely being consistent. Subsection (C) of § 41–4–4 provides in part:

A governmental entity shall pay any settlement or any final judgment entered against a public employee for:

(1) any tort which was committed by the public employee while acting within the scope of his duty; or

(2) a violation of property rights or any rights, privileges or immunities secured by the constitution and laws of the United States or the constitution and laws of New Mexico, which occurred while the public employee was acting within the scope of his duty.

Thus, if public employees were not immune from liability, the government would be responsible for all claims against the public employees and there would be no governmental immunity. Immunity for public employees is also essential to insure the unhampered performance of their governmental duties. If every action taken by a public employee is subject to judicial review, he will be reluctant to take actions

which are necessary for the good of the general public. The United States Supreme Court recently upheld the constitutionality of a California statute which provided immunity for public employees who determine when to parole or release a prisoner. The court found that the statute rationally furthered a reasonable policy on which it did not have authority to pass judgment. *Martinez v. State of California*, 44 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). The New Mexico Legislature acted within its powers in limiting the liability of public employees in the same manner as it limited the liability of the entity for whom they work.

■ Lastly, plaintiffs claim that the Act, as amended, is unconstitutional because it does not distinguish between malicious and negligent torts. This argument is essentially the same as the main argument advanced by plaintiffs. We have answered it above.

The lower court's order dismissing plaintiffs' complaint is affirmed, but to make clear the nature of the dismissal we amend the order dismissing plaintiffs' complaint to read "without prejudice". *See, Telephonic, Inc. v. Montgomery Plaza Company, Inc.*, 87 N.M. 407, 534 P.2d 1119 (Ct.App.1975).

IT IS SO ORDERED.

SUTIN, J., specially concurs.

WÀLTERS, J., dissents.

SUTIN, Judge (specially concurring).

I concur with Judge Lopez' opinion that the classifications made by the legislature are constitutional and that plaintiffs should be granted the right to amend their complaint to state a claim for relief under the Tort Claims Act. Defendants are not immune from liability under Counts I and II of plaintiffs' complaint.

Plaintiffs sued defendants for damages arising out of corporal punishment inflicted by Charles Otero, a teacher, upon Michael Garcia, a student in a public school. Plaintiffs' complaint was dismissed with prejudice without leave to amend and plaintiffs appeal.

Plaintiffs' complaint was composed of three counts:

(1) Otero, while acting in the scope of his employment, "willfully and maliciously, with intent to injure, struck MICHAEL GARCIA with his closed fist on the left side of the neck."

(2) Otero, "while in the conduct of his instruction or in the course of his authorized duties, breached his general responsibility and duty and the duty set by law and regulations, in that he negligently hit, or negligently came into bodily contact with, Plaintiff, MICHAEL GARCIA, while attempting to supervise or discipline MICHAEL GARCIA ..."

(3) "ALBUQUERQUE PUBLIC SCHOOLS, was negligent in employing CHARLES OTERO ...."

Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. The trial court found that the New Mexico Tort Claims Act, § 41–4–1, et seq. was constitutional and the motion was well taken and dismissed the action with prejudice without leave to amend. This is reversible error. *Enlow v. City of Carpinteria*, 20 Cal.App.3d 956, 98 Cal.Rptr. 129 (1971); *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 131 Cal. Rptr. 14, 551 P.2d 334 (1976); *Framlau Corporation v. County of Delaware*, 223 Pa.Super. 272, 299 A.2d 335 (1973).

Even though the Tort Claims Act is constitutional, plaintiffs, if allowed, can state a claim upon which relief can be granted. To deny plaintiffs this right is to unjustly deny plaintiffs their day in court.

Section 41–4–4(A), N.M.S.A.1978 reads in pertinent part:

A governmental entity and any public employee while acting within *the scope of duty* are granted immunity from liability for *any tort* except as waived by Sections 41–4–5 through 41–4–12, NMSA 1978. [Emphasis added.]

Section 41–4–3(F) defines "scope of duties":

"[S]cope of duties" means performing any duties which a public employee is *requested, required or authorized to per-*

*form by the governmental entity* regardless of the time and place of performance . . . [Emphasis added.]

When these sections are read together, defendants were granted immunity during the time in which Otero was acting in a manner "requested, required or authorized" by the Board of Education. If Otero was not "acting within the scope of duty," defendants were not granted immunity.

Plaintiffs, to state a claim for relief, must allege that defendants were not immune from liability because Otero was not "acting within the scope of duty." He was not "requested, required or authorized" to (1) maliciously and willfully hit Garcia with his fist under the facts of this case nor (2) negligently hit Garcia while attempting to supervise or discipline him.

If the legislature had intended to grant immunity for the malicious and negligent conduct of a teacher apart from "the scope of duty," it would have so stated. Rather, in its legislative declaration, § 41–4–2(B), it declared that:

 . . . Liability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty . . .

The traditional concept of duty is a pure question of law for courts to decide, and once a duty is declared to exist, the question of whether the duty was in fact breached is one for the trier of the facts. *Southern Union Gas Co. v. Briner Rust Proofing Co.*, 65 N.M. 32, 331 P.2d 531 (1958). If Otero acted "within the scope of duty," if he was "requested, required or authorized" to commit the acts alleged, defendants would be immune as a matter of law and the case should be dismissed with prejudice. If Otero did not act "within the scope of duty," defendants are not immune to liability and the complaint cannot be dismissed with prejudice.

It would be irrational to believe from the language used in §§ 41–4–4(A) and 41–4–3(F) that the legislature intended to grant immunity to defendants regardless of the severity and brutality exercised by a teacher in the school room. It would also be irrational to believe that the Board of Education "requested, required or authorized" such conduct. To do so would seriously question the invasion of the constitutional rights of students. See, *Ingrah̀am v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) wherein a 5–4 opinion was written in which severe corporal punishment did not violate a student's constitutional rights. We need not resolve this constitutional issue as long as plaintiffs can state a claim for relief.

By statute, a school teacher is mandated to "exercise supervision over students on property belonging to the public school . . . and while the students are under the control of the public school . . ." Section 22–10–5, N.M.S.A.1978. "Teaching . . . is recognized as a profession with all the rights, responsibilities and privileges accorded professions having their first responsibility to the public they serve. The primary responsibilities of this profession shall be to educate the children of this State and to improve the professional practices and ethical conduct of its members." Section 22–10–9, N.M.S.A.1978.

Otero was granted the right to exercise supervision over Michael Garcia primarily to educate him. "Supervision" can be held synonymous with "control" in the sense of "in loco parentis." It has been so declared by statute. *Kobylanski v. Chicago Board of Education*, 63 Ill.2d 165, 347 N.E.2d 705 (1976). This was a legislative determination that educators should stand in the place of a parent or guardian in matters relating to discipline. It is not derived from the Tort Claims Act and not subject to the immunity rule. The court said:

 . . . It is this status as parent or guardian which requires a plaintiff to prove wilful and wanton misconduct in order to impose liability upon educators. . . . [Id. 710, 347 N.E.2d 705].

Inasmuch as plaintiffs may not be subject to the Tort Claims Act by proper pleading, the appeal should be reversed as to Counts I

and II and plaintiffs granted the right to amend its complaint.

Under Count III, the Board of Education was granted immunity from liability for its own negligence in retaining Otero in its employ and in not ordering him to cease and desist from the use of violence. This was a purpose of the Tort Claims Act stated in the legislative declaration. Section 41–4–2(A) states:

[G]overnment should not have the duty to do everything that might be done . . .

The legislature wisely intended to clothe the state and local agencies from an influx of litigation that would challenge the conduct of the members of the agencies. These boards are not responsible for any tort it commits because "each governmental entity has financial limitations within which it must exercise authorized power and discretion in determining the extent and nature of its activities." Section 41–4–2(B).

Count III did not state a claim upon which relief can be granted.

WALTERS, Judge (dissenting).

Section 41–4–2, N.M.S.A.1978, is an absolute "Legislative declaration" of the purpose of the Tort Claims Act. It purports to impose liability "within the limitations of the . . . Act . . . *and in accordance with the principles established in that act.*"

Subsection B of § 41–4–2 sets forth those principles. Its most salient provision is that

[l]iability for acts or omissions under the Tort Claims Act *shall be based upon the traditional tort concepts of duty* and the *reasonably prudent person's standard of care in the performance of that duty.*

It further declares that the *standard of care, not* the *basis for or limit of liability,* should be determined with the knowledge that governmental entities have financial limitations which govern and direct to some extent their activities.

I do not think that the granting of immunity to all but eight classifications of governmental activity and the employees so engaged is a reasonable classification according to "traditional tort concepts" of duty or the "reasonably prudent person's standard of care" in performing such duties. *See Luna v. Needles Elementary School Dist.,* 154 Cal.App.2d 773, 316 P.2d 773 (1957). I am unable to comprehend the reasonableness of granting immunity to a schoolteacher who commits a tort in the performance of his duty, and withholding such immunity from a nurse's aide who allows a patient to fall out of bed because she forgot to raise the bedrails. Or from the laborer who fails to properly fill a pothole in the street and causes a motorist to suffer car damage.

I agree with Judge Lopez, and with the myriad of cases and law review articles, commentaries, and notes, that legislation having a rational basis for classification is not to be held unconstitutional as a denial of due process. My dissatisfaction with the legislation here considered is my complete bafflement in finding the rational basis for the classification of activities which the legislature has subjected to liability to the exclusion of others; and the blatant disregard of the legislature to its own "principles established in the act" for the imposition of liability. "Traditional tort concepts of duty" are cemented in the philosophy that a wrongdoer is responsible for the natural consequences of his misconduct. *Hicks v. State,* 88 N.M. 588, 594, 544 P.2d 1153 (1976). The Act does not aim at *responsibility* for misconduct; in all but eight areas it excuses him or it from wrongdoing. The "reasonably prudent person's" standard of care, and the "concepts of duty," are reduced to nothing more than sanctimonious mummings.

The majority opinion says there is a rational basis for reinstatement of partial sovereign immunity, but that does not answer the questions directed to the rational basis for the classifications. No reasonable explanations are offered, and I cannot glean the rationality of those classifications from the statute itself. That is not to say that there is no rational basis for classification; I say only that none has been pointed out and I am unable to discern a rational pattern in the categories selected by the legislature.

... Equal protection does not prohibit classification for legislative proposes, provided that there is a rational and natural basis therefor, that it is based on a substantial difference between those to whom it does and those to whom it does not apply, and that it is framed as to embrace equally all who may be in like circumstances and situations.

*Gruschus v. Bureau of Revenue,* 74 N.M. 775, 778, 399 P.2d 105 (1956).

Whether classifications are reasonable under the Equal Protection Clause must be determined in light of the purpose of the statute. *McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). In *McGeehan v. Bunch,* 88 N.M. 308, 540 P.2d 238 (1975), in holding a New Mexico statute unconstitutional the Court applied the standard of *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–254, 30 L.Ed.2d 225, 229 (1971):

... [T]he Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [Citations omitted.] The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.

I further disagree that immunity is necessary to permit public employees "to take actions which are necessary for the good of the general public" without being subject to judicial review. The commission of a tort, according to *traditional* concepts of tort, is rarely, to my knowledge, for the public good. Under "traditional concepts of duty," those are the very acts invariably subject to judicial review.

I cannot agree that a statute which wanders so arbitrarily from its stated purpose, without any clue for doing so, withstands appellant's attack.

I would reverse and reinstate the matter in accordance with the ruling of *Hicks v. State, supra.* My colleagues ruling to the contrary on the issue of the statute's constitutionality, I respectfully dissent.