759 F.2d 1155
 Ronald W. GALLAHER, d/b/a The Pawn and Coin Shop, Appellee,
v.
The CITY OF HUNTINGTON, Ottie Adkins, in his official
capacity as Chief of Police for the City of Huntington,
Robert Bailey, in his official capacity as Sheriff of Cabell
County, West Virginia and John L. Cummings, in his official
capacity as Prosecuting Attorney for Cabell County, West
Virginia, and Chauncey Browning and Col. John W. O'Rourke
and John D. Rockefeller IV, Appellants.
 No. 84-1312.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 30, 1984.
Decided April 11, 1985.
 
 Janet Frye Steele, Asst. Atty. Gen., Charleston, W.Va., for appellants.
 Gene W. Gardner, Huntington, W.Va. (Barrett, Chafin, Lowry & Hampton, Huntington, W.Va., on brief), for appellee.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 MURNAGHAN, Circuit Judge.
 
 
 1
 The temptation to steal still rears its ugly head. State governments understandably from time to time have to seek to introduce enhanced methods for detecting and preventing theft. The West Virginia legislature, in enacting in 1981 Sec. 61-3-51 of its Code has followed one recently developed course.[1] The statute is designed to impede the flow in commerce of stolen goods and thereby to diminish the likelihood that they will become more difficult to trace and to recover.[2]
 
 
 2
 Under a heading "Precious Metal and Gem Dealers; Records; Prohibited Acts," West Virginia Code Sec. 61-3-51[3] provides that anyone in the business of purchasing precious metals or gems other than for personal, family or household use (i.e. primarily for resale) shall secure from the seller sufficient proof of lawful ownership or a sworn affidavit of ownership (Sec. 61-3-51(a) ).[4] A record of each purchase must be entered in a permanently maintained book describing the item purchased and giving the date of purchase and name, residence and telephone number of the seller (Sec. 61-3-51(b) ).
 
 
 3
 The person in the business of purchasing precious metals or gems, during his, her or its normal business hours, shall make the record book available to inspection by any West Virginia law enforcement officer. A purchase under the statute must be reported in the same detail as required for the entry in the record book. The report must be made to the chief of police or sheriff within twenty-four hours of the purchase. The record book information must be preserved by the purchaser of a precious metal or gem for at least three years.
 
 
 4
 Physical removal from the possession of the purchaser, or alteration in any way of the form or substance of the metal or gem subject to the act is forbidden for a period of ten calendar days following the purchase (Sec. 61-3-51(c) ). However, transfer of title may occur in that ten day period, to be followed by delivery after the ten day period has elapsed. Violation of the law is made a felony subject to a sentence of not less than one nor more than two years in the penitentiary or not more than one year in jail or a fine of not less than $100 nor more than $5,000, or both (Sec. 61-3-51(e) ).
 
 
 5
 The appellee, Ronald W. Gallaher, a licensed pawn broker doing business as The Pawn and Coin Shop, has brought a declaratory action which seeks injunctive relief as well.[5] The district court made a declaration in Gallaher's favor that W.Va.Code Sec. 61-3-51 is unconstitutional because:
 
 
 6
 a) The various states' power to regulate the sale of and the dealing with gold has been pre-empted by the Congress of the United States;
 
 
 7
 b) West Virginia Code Sec. 61-3-51 violates the plaintiff's right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;
 
 
 8
 c) West Virginia Code Sec. 61-3-51 is so vague, indefinite and ambiguous that it violates the guarantees of the Fifth and Fourteenth Amendments.
 
 
 9
 The attack launched by Gallaher concerns only the statute in its facial guise. Gallaher and three of his employees first were arrested in 1982, and charged with failure to comply with the statute with respect to the purchase of two sterling silver spoons and one sterling silver fork. However, the authorities of the City of Huntington, where the arrest had taken place, indicated an intention to present the case to a grand jury, and dismissed the information. Without waiting for grand jury action, Gallaher brought the present proceeding in the United States District Court for the Southern District of West Virginia. It has been stipulated that Gallaher engages in the buying and selling of gold and silver in interstate commerce.
 
 
 10
 First, Gallaher argues preemption by reason of a federal statute, the Gold Reserve Act of 1934, Pub.L. No. 73-87, Secs. 3, 4, 48 Stat. 337, 338 (1934) which created conditions under which gold might be acquired and held. Sections 3 and 4 of the Gold Reserve Act of 1934 were repealed by Pub.L. 93-110, 87 Stat. 352 (1973), and amended by Pub.L. 93-373, 88 Stat. 445 (1974), whose stated purpose was to permit United States citizens to purchase, hold, sell, or otherwise deal with gold in the United States or abroad.[6] However, the federal statute, first limiting private dealings by United States citizens in gold and subsequently permitting such dealing, deals with apples while Gallaher contends, in effect, that it should cover oranges. The federal statute was concerned with monetary policy and whether gold might be used as currency or as a substitute therefor. Those concerns are not affected one way or the other by the West Virginia statute. It instead attempts to forestall unauthorized asportation of another man's property, a matter preeminently addressed under the police power of local authorities, whether authorities of the state of West Virginia or of its municipalities and counties.
 
 
 11
 Law enforcement against theft was in no way an objective of the federal statute. Preemption is a matter of congressional intent. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Where an exercise by a state of its police power is attacked there is a presumption against a congressional intention to preempt in the absence of a clear and manifest expression by Congress favoring it, or an evident public purpose which would be forestalled were preemption not found to have occurred. Ray v. Atlantic Richfield Co., 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). See Joe Flynn Rare Coins, Inc. v. Stephan, 526 F.Supp. 1275, 1279 (D.Kan.1981). Nothing here suggests an intention of Congress to preempt the state of West Virginia from regulating the traffic in and sale of property, in order to cut down on thefts thereof. Nor is there any indication of a manifest necessity for preemption in that area. We conclude, therefore, that the West Virginia statute retains full force and vitality.
 
 
 12
 The second contention raised by Gallaher is that Fourth Amendment rights are inevitably infringed because the statute requires maintenance of a record book which, without a warrant, must be available for inspection by law enforcement officers at all times during normal business hours. The argument is based on decisions of district courts in Florida and Kansas.[7]
 
 
 13
 We recognize that search warrants are required in most cases for administrative searches of business premises. Marshall v. Barlow's, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). The general rule, however, is not without exception. Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (Granting agents of Alcohol and Tobacco Tax Division of the Internal Revenue Service authority to inspect facilities of licensed liquor dealers without a warrant); United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (Upholding the validity of a warrantless search for firearms or ammunitions dealer). The greater latitude to conduct warrantless inspections of commercial property "reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home, and that this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections." Bionic Auto Parts and Sales, Inc. v. Fahner, 721 F.2d 1072, 1078 (7th Cir.1983). The fourth amendment requires, however, that any such intrusion be reasonable. "[T]here can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." Camara, supra, 387 U.S. at 536-37, 87 S.Ct. at 1734-35.
 
 
 14
 The question, therefore, becomes one of whether the law's well-recognized exception to the warrant obtention requirement for certain types of administrative searches extends to the warrantless search of the record book at issue here.[8] Although the state of West Virginia has not previously regulated the transfer of precious metals and gemstones, as it has firearms, W.Va. Code Sec. 61-7-9 (1984), or liquor, W.Va. Code Sec. 60-4-1, et seq. (Supp.1984), here, not altogether surprisingly, we run into the age-old argument that it has not been done before and, therefore, should not be permitted now. However, each of those trades subject to the warrant requirement exception (e.g., firearm vendors, liquor merchants) must have existed at one time before the first attempt to create a Fourth Amendment exception for them. So, too, for precious metals and gem stones, which all possess the characteristics of substantial value and come in ornamental guises easy of alteration through melting down, redesign or breaking up, a beginning must be made. From the occasion of the big bang which initiated the existence of the universe, there has been a first time for everything.
 
 
 15
 More importantly, in balancing the need for a search limited exclusively to a dealer's record book against the intrusion occasioned by such a search, we are persuaded that the statute's warrantless search provision is entirely reasonable. The requirement of access to the record book has been regarded by the West Virginia legislature as an essential one. Faced with the increasing use of legitimate businesses as conduits for the transfer and sale of stolen goods, the West Virginia legislature enacted Sec. 61-3-51 as a means of controlling the traffic in stolen precious metals and gems. The statute limits the search solely to inspection of the record book, maintained by the dealer specifically for the registration of precious metals encompassed by the statute. The hours of inspection are limited to the normal business hours of the dealer thereby minimizing the intrusiveness of the search. There need be no fear by a business person trading in precious metals or gems of police harassment during the wee hours of the night.[9] Hence, the regulatory scheme "is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." Donovan v. Dewey, 452 U.S. 594, 600, 101 S.Ct. 2534, 2539, 69 L.Ed.2d 262 (1981). The extension of the exception excusing the obtaining of a warrant to inspect a record book kept for hazardous substances so as to reach records of purchases of precious metals and gem stones is merited and may be imposed without infringement of fourth amendment rights of those dealing in the commodities.
 
 
 16
 Lesser arguments are advanced by Gallaher as to why the statute is facially unconstitutional, but they need not long detain us. On purchase of precious metals or gems one is required by the statute to hold on to the items for ten days before altering or disposing of them. One is not forbidden, however, from reselling in that ten day interval so long as, physically, the item remains unaltered and in the possession of the initial purchaser. The ten day holding period is about as short as one reasonably can contemplate if the obtaining of a warrant to permit inspection of the items themselves and to allow recent victims of theft to view them is to occur. The picture of a dealer helplessly exposed to fluctuation in value in the ten day period does not engender much concern, partly because resale is not interfered with, only the physical appearance and location of the items must remain unaltered, and partly because the market goes up at least as frequently as it goes down in value, and the ten day period is neutral in its overall impact for it will favor as many dealers as it will injure.
 
 
 17
 Similarly, we are not impressed by the contention that the words "precious metals" are too imprecise to permit enforcement of a statute requiring recordation of items so identified.[10] Here we have a broad facial attack by someone whose only concrete example of the statute's application concerns sterling silver cutlery items, two spoons and one fork. Silver is specifically referred to in the statute[11] and, in any event, can hardly be doubted to be a precious metal as that term is universally applied and understood.[12] Whether rhodium or uranium or other metals may be sufficiently identified by the term "precious metal" is a question which will not arise unless and until a case specifically concerns items containing those metals. "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Hoffman Estates v. Flipside, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). A statute is not void for vagueness when a purely facial attack is made simply because it may be unclear in its applications to the conduct of hypothetical parties. Ibid.
 
 
 18
 As for a like attack on the term "sufficient proof of lawful ownership" as vague, the statutory alternative of "a sworn affidavit of ownership" leaves anyone affected by the act free either to take what satisfies him as "sufficient proof," or, if he has doubts, to insist on an affidavit which will fully protect him. The vagueness or uncertainty approach here makes little sense as an ordinary person exercising common sense can sufficiently understand and fulfill the statute's prescriptions. Broadnick v. Oklahoma, 413 U.S. 601, 607-08, 93 S.Ct. 2908, 2913-14, 37 L.Ed.2d 830 (1973). The statute is not phrased in such a manner that ordinary people must necessarily guess at its meaning. Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).
 
 
 19
 Accordingly, the judgment of the district court is reversed and the case remanded for entry of a judgment consistent with this opinion.
 
 
 20
 REVERSED.
 
 
 
 [1]
 See also, e.g., The Precious Metals Dealers Act, Kan.Stat.Ann. Sec. 16-718 (Supp.1984), and Fla.Stat.Ann. Sec. 538.01, et seq. (Supp.1983)
 
 
 [2]
 The statute is similar in objective to a Model Code proposed by the Jewelers of America entitled "An Act Regulating Purchases of Jewelry, Precious Metals and Stones," which has stated its purpose to be "to combat the increasing incidence of theft, and sales of stolen property." A proposed statute similar to the West Virginia statute, the "Regulation of Precious Metal Dealers Act," "is designed to regulate a new and expansive business that developed in response to the rapid rise in the price of precious metals. It is also intended to stop the buying and selling of stolen goods." Suggested State Legislation 1982, volume 41, page 146. The suggested state legislation was derived from the Code of Laws of South Carolina Sec. 40-54-10, et seq. (1981), enacted contemporaneously with the West Virginia Act
 
 
 [3]
 The statute is codified in chapter 61 of the West Virginia Code entitled "Crimes and their Punishment."
 
 
 [4]
 The stipulation of the parties, on the basis of which the case was presented to the district court and is now before us on appeal speaks only to the purchase of a precious metal, and restricts purchases by the plaintiff to items of gold and silver. However, while strictly speaking the present opinion states the law only as to purchases of gold and silver, the principles enunciated should equally apply to other precious metals and to gems
 
 
 [5]
 The prayer for injunctive relief was subsequently withdrawn
 
 
 [6]
 No provision of any law in effect on the date of enactment of this Act, and no rule, regulation, or order in effect on the date subsections (a) and (b) become effective may be construed to prohibit any person from purchasing, holding, selling, or otherwise dealing with gold in the United States or abroad
 Pub.L. No. 93-373, Sec. 2, 88 Stat. 445 (1974).
 
 
 [7]
 Mid-Florida Coin Exchange, Inc. v. Griffin, 529 F.Supp. 1006 (M.D.Fla.1981); Joe Flynn Rare Coins, Inc. v. Stephan, 526 F.Supp. 1275 (D.Kan.1981). However, the Kansas statute not only allowed law enforcement officers to examine a dealer's record book but also permitted warrantless examination and seizure of any precious metals found on the premises and believed to have been stolen. While the statute was, in general, upheld, Sec. 8 of the statute was repealed and amended to sever the offensive section. The Florida statute similarly allowed officers, without a warrant, to examine at any time not only the dealer's record book but all precious metal items on the premises as well. In Florida, on inseparability grounds, the statute as a whole was struck down. Inseparability is not a favored route in West Virginia. See W.Va.Code Sec. 2-2-10(cc) (1979)
 
 
 [8]
 It is to be observed that West Virginia limits warrantless activity to search of the record book required by law to be maintained. Unlike the Florida and Kansas statutes dealt with in Mid-Florida and Joe Flynn, there was no statutory authorization of warrantless search or seizure of precious metals on the premises
 
 
 [9]
 Other state statutes authorizing the warrantless inspection of business records and the imposition of recordkeeping requirements have similarly been upheld. United States ex rel. Terraciano v. Montanye, 493 F.2d 682 (2d Cir.1974), cert. denied, Terraciano v. Smith, 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974) (New York Public Health Law statute limiting the inspection to pharmacist's records of "narcotics, accepted narcotic preparations and depressant and stimulant drugs" held not violative of fourth amendment); Pollard v. Cockrell, 578 F.2d 1002, 1014 (5th Cir.1978) (Texas statute allowing on-premises inspection of appointment book used in operation of massage parlor business); United Health Clubs, Inc. v. Strom, 423 F.Supp. 761, 756 (D.S.C.1976) (Maintenance and inspection at reasonable time of massage parlor operator's books); Bionic Auto Parts & Sales, Inc. v. Fahner, 721 F.2d 1072 (7th Cir.1983) (Illinois statute allowing warrantless search of premises and record-keeping requirement for auto parts dealers, scrap processors and parts rebuilders)
 
 
 [10]
 The contention comes with questionable grace from a party who first has pleaded and then was able to enter a stipulation that he operates "a business which commonly purchases precious metals or precious gems, or both, for purposes other than personal, family or household use." He presumably could identify the items as precious metals or gems, or else he hardly could have so pleaded or have entered the stipulation
 
 
 [11]
 " '[P]recious metal' means gold, silver, platinum or other valuable metal; and precious gem means any diamond, pearl, emerald, ruby, sapphire or similar precious stone." W.Va.Code Sec. 61-3-51(a)
 
 
 [12]
 Gallaher hazards the conjecture that alloys containing portions of gold or silver, mixed with base metals, may or may not be covered, so confusion is inherent in the statute. But sufficient to the day is the evil thereof. For the moment we need only address the statute as it applies to objects entirely or predominantly constructed of gold or silver or platinum, or possibly of gemstones in jewelry form