767 P.2d 355

Melvin L. GARCIA, Raymond A. Sanchez, David J. Wilson, Margaret H. Amacker and Duke City Pit Bull Terrier Club, Inc., a non-profit New Mexico corporation, Plaintiffs–Appellants,

v.

The VILLAGE OF TIJERAS, a municipality of the State of New Mexico, Defendant–Appellee.

No. 9424.

Court of Appeals of New Mexico.

Oct. 11, 1988.

Certiorari Denied Dec. 6, 1988.

Billy R. Blackburn, Michael Ushijima, Albuquerque, for plaintiffs-appellants.

Charles J. Crider, Matthews, Crider, Calvert & Bingham, P.C., Albuquerque, for defendant-appellee.

Dale C. Christensen, Jr., Mark J. Hyland, Heidi B. Goldstein, Seward & Kissel, New York City, Louis P. McDonald, Albuquerque, for the American Kennel Club, Inc., as Amicus Curiae.

## OPINION

BIVINS, Judge.

Plaintiffs appeal from a judgment upholding the constitutionality of an ordinance of the Village of Tijeras, New Mexico, banning the ownership or possession of a breed of dog "known as American Pit Bull Terrier." They challenge the ordinance on the grounds that it: (1) is void for vagueness; (2) violates substantive and procedural due process; and (3) provides for the taking of private property without just compensation.[1] Plaintiffs do not question the authority of the Village to enact the ordinance. We affirm.

## FACTS

The Village of Tijeras (Village) is a small, semi-rural community located within Bernalillo County with a population of approximately 312 residents. Eighteen of the eighty households within the Village possessed one or more pit bull dogs at the time the ordinance was enacted. For some time prior to enactment of the ordinance, Village residents had been repeatedly subjected to attacks on their persons and animals by pit bull dogs. Many of their animals were killed and several residents were injured in the attacks. Two months prior to enactment of the ordinance, a nine-year-old girl was severely mauled by pit bull dogs on her way home from school.

Following a series of town meetings for the purpose of discussing the problem presented by these dogs, the Village passed Ordinance No. 32 on May 14, 1984. Section VI, Paragraph I of Ordinance No. 32 makes it unlawful:

> to own or possess in the Village any dog of the breed known as American Pit Bull Terrier. Any such dog may be impounded by the Mayor or Animal Control Officer to be destroyed as provided herein. It shall be held until a determination is made by a court of competent jurisdiction that the animal is an American Pit Bull Terrier and shall accordingly order that the dog be destroyed.

A month later, plaintiffs filed suit seeking declaratory judgment holding the Village ordinance unconstitutional. Plaintiffs Melvin L. Garcia, Raymond A. Sanchez, and David J. Wilson are residents of the Village and each is the owner of one or more American Pit Bull Terriers. Plaintiff Margaret H. Amacker is a resident of Bernalillo County and is the owner of four "domestic animals which may be classified as American Pit Bull Terriers." Amacker is also the president and registered agent for the Duke City Pit Bull Terrier Club,

---

1. Defendant argues that plaintiffs have not complied with the Rules of Civil Appellate Procedure, NMSA 1978, Civ.App.R. 9(a)(3)(ii) & (iii) (Supp.1985) (now codified as SCRA 1986, 12–213(A)(2) & (3)), by failing to recite all the evidence in favor of the trial court's findings and to specifically challenge certain findings and conclusions. The transcripts and briefs in this case sufficiently present the issues to allow review on the merits, notwithstanding a technical violation of the rules. *Huckins v. Ritter,* 99 N.M. 560, 661 P.2d 52 (1983).

and travels frequently to the Village with her four animals.

After denying defendant's motion for summary judgment, the matter proceeded to trial. The trial court entered its findings of fact and conclusions of law upholding the ordinance. Judgment was entered in favor of the Village. This appeal follows.

DISCUSSION

As a preliminary matter we note that in scrutinizing the constitutionality of a legislative enactment certain rules of statutory construction favoring constitutionality of the measure are applicable. Foremost among these is the rule that all legislative acts are presumed to be constitutional. *State v. Segotta*, 100 N.M. 498, 672 P.2d 1129 (1983). This presumption extends to municipal ordinances. *City of Albuquerque v. Jones*, 87 N.M. 486, 535 P.2d 1337 (1975). In reviewing the constitutionality of a statute or ordinance, we indulge in every presumption favoring validity of the enactment. *Vandolsen v. Constructors, Inc.*, 101 N.M. 109, 678 P.2d 1184 (Ct.App. 1984). This court is obliged to uphold the enactment unless it is satisfied beyond all reasonable doubt that it exceeds constitutional limitations. *Id.; State v. Ball*, 104 N.M. 176, 718 P.2d 686 (1986). The party attacking a statute or ordinance has the burden of establishing its invalidity. *City of Albuquerque v. Jones*.

All of plaintiffs' arguments are based on asserted violations of their right to due process.[2]

1. *Vagueness*

Plaintiffs first argue that the challenged ordinance fails to define the term "known as American Pit Bull Terrier" with sufficient specificity and is, therefore, void for vagueness. They contend the term is incapable of precise interpretation. Plaintiffs note that the term "American Pit Bull Terrier" is used only by the United Kennel Club, that the American Kennel Club uses the term "American Staffordshire Terrier" to register the same breed, that the Ameri-

can Kennel Club also registers the "Staffordshire Bull Terrier" and the "Bull Terrier," and that all of these breeds might be described as "pit bulls."

The trial court found that the American Pit Bull Terrier is a recognized breed of dog readily identifiable by laymen. We understand the trial court's finding to have been that the breed can be identified by persons who are not qualified to be dog show judges. Plaintiffs have challenged this finding as not supported by substantial evidence. They further argue that the breed varies so much in physical characteristics that it is difficult for the average person to ascertain, with certainty, whether a dog is in fact an American Pit Bull Terrier.

Plaintiffs also contend that owners of mixed-breed dogs, which might be to some percent pit bull, will have no idea whether the ordinance applies to them at all, because the ordinance lacks meaningful standards that could be used to identify those dogs subject to its prohibition. Plaintiffs note that a person might drive through the Village of Tijeras with a pit bull in his or her vehicle without any prior notice of the ordinance.

Under these circumstances, plaintiffs argue that the phrase "known as" is open to a number of interpretations. They contend that this phrase is independently vague. Plaintiffs have standing to challenge the ordinance, on vagueness grounds, only as it applies to them. *See diLeo v. Greenfield*, 541 F.2d 949 (2d Cir.1976); *State v. Hines*, 78 N.M. 471, 432 P.2d 827 (1967). One to whose conduct a statute clearly applies may not successfully challenge it for vagueness. *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

There was testimony at trial that the term "pit bull" is the generic term for "American Staffordshire Terrier." There was also testimony at trial that there is no difference between the American Stafford-

---

**2.** Although plaintiffs raise the vagueness argument in a section of their brief separate from their other due process arguments, we note that the vagueness doctrine is an aspect of due process. *See State v. Gattis*, 105 N.M. 194, 730 P.2d 497 (Ct.App.1986).

shire Terrier and the American Pit Bull Terrier.

In addition, there was testimony that each breed of dog has a typical physical appearance termed as "phenotype," and that an unregistered dog can be identified as being of the breed "American Pit Bull Terrier" by its physical characteristics, or phenotype. Several witnesses testified that they could recognize an American Pit Bull Terrier by its physical characteristics.

We believe this evidence supports a determination that the breed American Pit Bull Terrier is a breed of dog recognized by its physical appearance. Given our obligation to indulge every presumption in favor of constitutionality, we interpret the term "known as" in light of the testimony at trial. Thus, we interpret the ordinance to include not only dogs that are registered, but also dogs that are recognizable, as American Pit Bull Terriers or American Staffordshire Terriers.

The trial court found that plaintiffs owned or were involved with American Pit Bull Terriers. These findings were not challenged on appeal. We conclude that the ordinance clearly applies to plaintiffs' conduct.

■ It is clear, then, that plaintiffs had notice that the ordinance proscribes the conduct in which they were engaged. The essence of the vagueness doctrine is notice. *State ex rel. Health & Social Servs. Dep't v. Natural Father,* 93 N.M. 222, 598 P.2d 1182 (Ct.App.1979). Since plaintiffs had the requisite notice that the ordinance prohibited their activities, the ordinance is not vague as applied to them. Therefore, we are precluded from striking the ordinance on that ground.

■ As we noted above, plaintiffs attempt to attack the ordinance by pointing out that it is vague as it might be applied to owners of mixed breeds of dog or to other dog owners who have no knowledge that their dog may be "known as [an] American Pit Bull Terrier." This attack is not germane to the inquiry here. A statute is not void for vagueness when a purely facial attack is made alleging uncertainty

in its application to hypothetical parties. *Gallaher v. City of Huntington,* 759 F.2d 1155 (4th Cir.1985). "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed. 2d 362 (1982) (footnote omitted).

The ordinance clearly and admittedly applies to plaintiffs' conduct and, therefore, is not vague for purposes of this appeal.

### 2. *Rational Relation*

Plaintiffs argue that the Village ordinance at issue violates substantive due process. In order to withstand scrutiny under the fifth and fourteenth amendments to the United States Constitution and similar provisions in our state Constitution, N.M. Const. art. II, §§ 4 & 18, a statute or ordinance must bear a rational relationship to a legitimate legislative goal or purpose. *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978); *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976); *Casillas v. S.W.I.G.,* 96 N.M. 84, 628 P.2d 329 (Ct. App.1981).

■ That the Village had a legitimate purpose in enacting the ordinance—the protection of the health and safety of Village residents—is undisputed. However, plaintiffs contend that the ordinance is not rationally related to that purpose. We disagree. The trial court's findings were to the effect that American Pit Bull Terriers presented a special danger to the health and safety of Village residents. The evidence supports this determination.

As we have already stated, eighteen of the eighty households in the Village possessed pit bull dogs, a proportion approaching 25%. Village witnesses testified concerning a number of specific incidents involving pit bull attacks in the Village. The trial court found that there had been several serious attacks involving American Pit Bull Terriers.

The attack on the nine-year-old girl, Angela Hands, was the most tragic incident. On March 19, 1984, Angela was severely mauled by American Pit Bull Terriers belonging to her grandparents while on her way home from school. Angela was initially attacked by two of her grandparents' younger pit bulls, which were running loose outside their fenced enclosure. One of the young dogs bit her on the hip and knocked her to the ground. The second young dog joined in the attack; the two parent dogs climbed a six-foot-high fenced enclosure and also attacked Angela. She sustained extensive injuries requiring major reconstructive and rehabilitative surgery. Doctors estimate that Angela will continue to undergo these surgeries until age thirty-five.

In addition to the attack on Angela, there were other reported mishaps in which American Pit Bull Terriers were involved. In December 1983, Melinda Ryan's dog was attacked in the Village by a pit bull belonging to David Wilson. The attack was prolonged, as the pit bull would not release its victim despite shouting, throwing water, and stamping on the attacking dog's neck. Eventually, the Wilson dog released the Ryan dog, but only after repeated blows to the offending animal's head and neck. The Ryan dog was severely injured, sustaining extensive ligamentous and muscular damage that required veterinary surgery.

In July 1983, twenty-seven ducks, chickens, geese, and turkeys belonging to Joann Garcia were killed by American Pit Bull Terriers within the Village when the dogs worked their way into Garcia's fenced enclosure. Modesto Garcia, another resident of the Village, was bitten when American Pit Bull Terriers attacked his son's dog in July 1984. There were other incidents in addition to those described above.

As a complement to the testimony regarding specific incidents, the Village also presented evidence establishing that the American Pit Bull Terrier breed possesses inherent characteristics of aggression, strength, viciousness and unpredictability not found in any other breeds of dog. The testimony indicates that American Pit Bull Terriers are frequently selected by dogfighters specifically because of their extraordinary fighting temperament. In a fight or attack, they are very aggressive and the most tenacious dog of any breed. They continue their attack until they are separated or their victim is destroyed. Unlike other breeds of dog that "bite and slash" in an attack, pit bulls will "bite and hold," thereby inflicting significantly more damage upon their victim.

Testimony was also presented that pit bulls are especially dangerous due to their unpredictability. It is impossible to tell from looking at a pit bull whether it is aggressive or not. American Pit Bull Terriers have been known to be friendly and docile at one moment, willing to sit on your lap and lick your face, and at the next moment to attack in a frenzied rage. A pit bull in the grip of such a fighting frenzy will not respond to attempts to deter its attack. Such frenzies can occur at any time and for no apparent reason. There was testimony to the effect that such berserk frenzies do not occur in other breeds of dog. This behavior has been substantiated by a number of reports from owners of American Pit Bull Terriers. There was further evidence to show that, in proportion to their population, more dog-bite incidents are caused by American Pit Bull Terriers than by other breeds.

Other evidence tended to establish that the American Pit Bull Terrier is an exceptionally strong and athletic dog. Extraordinary measures are required for confining American Pit Bull Terriers, such as a six-foot chainlink fence with an overhanging ledge to keep the dogs from jumping out, and six-inch wide, one-foot deep concrete footings around the base to keep the dogs from digging under. They have exceptionally strong bites, possibly twice the strength of bites of other dogs. They can grip cyclone fencing and tear it from its mounting, and have been known to destroy sheet metal panels by ripping them apart with their teeth.

Testimony by a representative of the Animal Humane Association in Albuquerque established that the society takes in many

stray dogs of every breed and mix-breed. Some have exhibited aggressive behavior towards other dogs, but none have ever caused the kinds of injuries or exhibited the aggressive behavior shown by American Pit Bull Terriers. The Albuquerque Animal Humane Association and other humane societies do not adopt out pit bull dogs because of their potential for attacks on other animals and people.

Plaintiffs produced contrary evidence to the effect that environment and training are more important than genetics in determining the behavior of a dog. Many breeders, including plaintiff Amacker, breed American Pit Bull Terriers for the show ring, where aggressiveness towards humans would disqualify them. . Evidence was presented concerning the history of this breed of dog that indicated it was not bred for aggressiveness towards humans. Many owners of American Pit Bull Terriers report that they are loyal and gentle family pets. Evidence was presented to establish that other breeds of dog are responsible for more of the total number of bite incidents every year than are American Pit Bull Terriers.

Notwithstanding this evidence presented by plaintiffs, the evidence presented by the Village was extensive and was derived from credible sources. What is true of some American Pit Bull Terriers may well not be true of others. However, where evidence is conflicting, we defer to the fact finder and uphold the findings if supported by substantial evidence. *See Getz v. Equitable Life Assurance Soc'y of U.S.*, 90 N.M. 195, 561 P.2d 468, *cert. denied*, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Anaconda Co. v. Property Tax Dep't*, 94 N.M. 202, 608 P.2d 514 (Ct.App.1979). We believe the evidence amply supports the trial court's findings concerning the threat to the safety of the residents of the Village presented by American Pit Bull Terriers.

In light of the instances of personal injury and property damage in the Village attributable to American Pit Bull Terriers, of the unusual prevalence of dogs of this breed in the Village, and of the evidence presented concerning the inherent characteristics of aggression, strength, and unpredictability of this breed, we find the ordinance banning possession of American Pit Bull Terriers is reasonably related to protecting the health and safety of the residents of the Village. Thus, we hold that the Village ordinance does not violate substantive due process. In so holding, we do not intend to condemn the American Pit Bull Terrier breed as a whole; we recognize that there are "good" pit bulls and "bad" pit bulls, as plaintiffs argue. We also recognize, however, that pit bulls presented a special threat to the residents of the Village, due to the dogs' prevalence in the Village and to those dogs' history of aggressive behavior. Our ruling would be the same if eighteen out of the eighty households owned German Shepherd dogs, and German Shepherd dogs had been involved in a number of attacks on people and animals before being banned from the Village. The Village has no animal control officer and must rely on a contractual arrangement with county authorities.

The Village was entitled to combat the special threat it faced from pit bulls, and the Village's action was clearly rationally related to efforts to combat that threat. The trial court's carefully drafted decision was narrowly tailored to the unique situation presented; so is our holding affirming that decision.

■ Plaintiffs also contend that an ordinance banning only one breed of dog rather than all breeds, pure and mixed, bears no rational relationship to a legitimate governmental purpose. Although this argument was raised in the context of their due process claim, we view it as alleging a violation of equal protection. Even so, we find that the Village's classification, whereby owners of American Pit Bull Terriers are treated differently than owners of other breeds of dog, is not violative of either due process or equal protection. Where the challenged ordinance does not trammel fundamental rights or involve a suspect classification, the court presumes the constitu-

tionality of the discriminatory classification. *Garcia v. Albuquerque Pub. Schools Bd. of Educ.*, 95 N.M. 391, 622 P.2d 699 (Ct.App.1980). In order to meet the requirements of the equal protection clauses of the United States and New Mexico Constitutions, the challenged classification must be rationally related to a legitimate state interest. *Id.* "If any state of facts can reasonably be conceived which will sustain the classification, the statute is valid." *Id.* at 393, 622 P.2d at 701.

As mentioned above, there is substantial evidence of record that American Pit Bull Terriers presented a special threat to the safety of the residents of the Village over and above that presented by other breeds of dog. A legislature or municipal governing body is entitled to address threats in a piecemeal fashion, countering each threat as it arises. *See Vandolsen v. Constructors, Inc.* To satisfy equal protection tenets, it is not necessary that the Village address all potential threats from all breeds of dog; instead, the Village was entitled to address a phase of the problem that was of acute concern. *See id.* Attacks by American Pit Bull Terriers, as opposed to dog attacks in general, were of acute concern to the Village. We therefore hold that the ordinance does not violate plaintiffs' rights to equal protection.·

### 3. *Procedural Due Process*

■ Plaintiffs argue that the ordinance violates due process in that it fails to provide owners of American Pit Bull Terriers notice and an opportunity to be heard prior to the destruction of their dogs. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *McCoy v. New Mexico Real Estate Comm'n*, 94 N.M. 602, 614 P.2d 14 (1980); *James v. Brumlop*, 94 N.M. 291, 609 P.2d 1247 (Ct.App.1980); *see also Lacey v. Lemmons*, 22 N.M. 54, 159 P. 949 (1916). We disagree.

The ordinance on its face provides that a dog identified as an American Pit Bull Terrier "may be impounded * * * [and] held

until a determination is made by a court of competent jurisdiction that the animal is an American Pit Bull Terrier * * * *" The plain language of the ordinance contemplates that a hearing will be held to determine whether a dog is an American Pit Bull Terrier prior to the destruction of the dog. *See State v. David*, 102 N.M. 138, 692 P.2d 524 (Ct.App.1984) (constitutional amendment providing that bail may be denied in certain instances by order of district court contemplates a due process hearing). That the ordinance does not expressly set out the procedures to be followed with respect to notice of the hearing and an owner's right to appear and be heard is not fatal.

It is well settled that if an act can be applied or interpreted so as to avoid constitutional conflict, such construction should be adopted by the court. *Id.* Moreover, we indulge in every presumption favoring validity of the enactment. *Vandolsen v. Constructors, Inc.* We therefore conclude that the express requirement of a judicial determination provided by the ordinance contemplates that such determination will comport with due process requirements, namely, that a hearing will be held before a court of competent jurisdiction and that the owner of the impounded animal will be provided notice of the hearing and an opportunity to appear before the court to present evidence and defenses to the action. *See Montoya v. Blackhurst*, 84 N.M. 91, 500 P.2d 176 (1972). Accordingly, the opportunity to be heard and present evidence would occur at a meaningful time, that is, prior to the destruction of the dog. *See Mathews v. Eldridge.*[3]

We therefore reject plaintiffs' challenges under this point.

### 4. *Taking of Property Without Just Compensation*

■ Plaintiffs argue that the ordinance violates due process in that it allows the taking of private property without just compensation. This argument is likewise without merit. Plaintiffs correctly note

---

**3.** Section III, paragraph B of the ordinance also provides that notice of impoundment and procedures for redemption will be given to the own-

ers in accordance with applicable Bernalillo County Ordinances, which the ordinance purports to incorporate by reference.

that, in New Mexico, dogs are deemed personal property. *See* NMSA 1978, § 77–1–1. However, it is well established that property and property rights are held subject to the proper exercise of the police power. *Mitchell v. City of Roswell*, 45 N.M. 92, 111 P.2d 41 (1941). "[A] reasonable regulation enacted for the benefit of the public health, convenience, safety or general welfare is not an unconstitutional taking of property in violation of * * * due process * * * *" *Id.* at 98, 111 P.2d at 44. The ordinance, being a proper exercise of the Village's police power, is not a deprivation of property without due process even though it allows for the destruction of private property. *See Alber v. Nolle*, 98 N.M. 100, 645 P.2d 456 (Ct.App.1982).

Cases cited by plaintiffs for the proposition that the state may not order the destruction of private property absent extreme, imperative or overruling necessity do not support their claim. The United States Supreme Court in *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), and *Sentell v. New Orleans & Carrollton R.R.*, 166 U.S. 698, 17 S.Ct. 693, 41 L.Ed. 1169 (1897), recognized that there can be a deprivation of private property where justified as a legitimate exercise of the police power.

> Even if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the State, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens.

*Sentell v. New Orleans & Carrollton R.R.*, 166 U.S. at 704, 17 S.Ct. at 695. A legislative enactment is justified as a legitimate exercise of the police power if it is reasonably necessary to preserve and protect the public health, safety, morals or welfare. *State v. Dennis*, 80 N.M. 262, 454 P.2d 276 (Ct.App.1969). We deem that test to be satisfied here. The extent of damages previously inflicted by American Pit Bull Terriers in the Village, coupled with the evidence of the animal's potential threat and unpredictability, furnish such necessity.

In the matter before us, the Village has legitimately exercised the police power to curtail a menace to the public health and safety. Plaintiffs cite to *Dennis* for the proposition that a legislative body may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable on the use or enjoyment of private property. In *Dennis*, an arson statute (NMSA 1953, § 40A–17–5 (Repl.Vol. 6, 1964)), which was drafted so broadly that it imposed criminal sanctions even on those who might burn structures for entirely legitimate and beneficial purposes, was determined to be an unreasonable exercise of the police power.

Although plaintiffs argue that there are many legitimate and beneficial uses for the American Pit Bull Terrier, the evidence adduced at trial supports the inference that a significant number of such dogs are dangerous due to training and upbringing, as well as their inherent characteristics of aggression, strength, viciousness and unpredictability. Defendant draws a proper analogy to *Green v. Town of Gallup*, 46 N.M. 71, 120 P.2d 619 (1941). In that case, a town ordinance imposing criminal penalties for door-to-door solicitation was upheld, despite allegations that not all door-to-door solicitors represented a nuisance or threat to the public. *Id.* The supreme court recognized that activity which might be innocent or beneficial elsewhere, could rise to the level of a general problem requiring legislative regulation in some municipalities, due to local conditions. *Id.*

In the present case, evidence demonstrates that American Pit Bull Terriers present a special threat to Village residents, over and above any threat they might offer to the public in general. This evidence consisted of testimony establishing that there is a high percentage of pit bull dogs in relation to the population of the Village, and that Village residents had been repeatedly subjected to attacks on their persons and animals by American Pit Bull Terriers for some time prior to enactment of the ordinance. In light of this evidence, the Village could properly determine that an ordinance banning American Pit Bull Terriers was necessary for the

**124**

protection of its citizens. *See Sentell v. New Orleans & Carrollton R.R.; State v. Dennis.* That a harmless or inoffensive American Pit Bull Terrier may be banned in order to abate the threat to safety of the Village presented by other American Pit Bull Terriers does not render the ordinance invalid. *Cf. Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

We also point out that the geographic scope of this ordinance is limited. Plaintiffs and other pit bull dog owners in the Village may remove their dogs from the Village. We also note that the Village notified everyone prior to enforcing the ordinance. Under these circumstances, a finding that a taking requiring compensation has occurred is much less compelling. *See Quilici v. Village of Morton Grove,* 532 F.Supp. 1169 (N.D.Ill.1981), *aff'd,* 695 F.2d 261 (7th Cir.1982), *cert. denied,* 464 U.S. 863, 104 S.Ct. 194, 78 L.Ed.2d 170 (1983).

It is not entirely clear from the ordinance itself under what circumstances an impounded American Pit Bull Terrier would be destroyed. If the provisions for impounding vicious animals were to be incorporated by the reference to impounding as a procedure, the dog owner apparently would be permitted to redeem the animal. In this record, there is no claim that any dog has been destroyed or is threatened with destruction. We believe the question of whether the provision for destruction is a compensable taking is not ripe for judicial determination; therefore, we do not reach it. *Cf. Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 101 S.Ct. 2389, 69 L.Ed.2d 1 (1981) (where there was no allegation of evidence that penalties had been imposed, a due process challenge to civil penalties provided for violation of certain administrative orders was held premature); *see Sanchez v. City of Santa Fe,* 82 N.M. 322, 481 P.2d 401 (1971) (a prerequisite of an "actual controversy" is an issue that is "ripe" for judicial determination).

Plaintiffs' last claim of error therefore is also rejected.

## CONCLUSION

Under the facts of this case, we hold that Village of Tijeras Ordinance No. 32 is not violative of the United States or New Mexico Constitutions insofar as it prohibits the ownership or possession of American Pit Bull Terriers within the Village limits. The judgment of the district court is affirmed.

IT IS SO ORDERED.

MINZNER and FRUMAN, JJ., concur.