In re Raymond H. WOOD, Jr., DDS a/k/a Ray Wood, Debtor.

Raymond H. WOOD, Jr., DDS a/k/a Ray Wood, Plaintiff–Appellant,

v.

UNITED STATES of America, Acting through the INTERNAL REVENUE SERVICE, Defendant–Appellee.

No. 88–3252.

United States Court of Appeals, Eleventh Circuit.

March 2, 1989.

Lisa C. Cohen, Keystone Heights, Fla., for plaintiff-appellant.

Gary R. Allen, Chief, William S. Rose, Jr., Asst. Atty. Gen., Wynette J. Hewett, Tax Div., Gary D. Gray, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before RONEY, Chief Judge, COX, Circuit Judge, and MORGAN, Senior Circuit Judge.

PER CURIAM:

Raymond Wood, the Debtor, initiated an adversary proceeding in the bankruptcy court to determine the dischargeability of his federal income tax liabilities for the years 1979 through 1982. The bankruptcy court ruled that Wood's liabilities were dischargeable for each of these years except the 1982. Wood had sought a discharge for the year 1982 also, challenging on constitutional grounds the validity of certain discharge provisions of the Bankruptcy Code. The bankruptcy court rejected this challenge, *In re Wood,* 78 B.R. 316 (Bankr. M.D.Fla.1987), and the district court, on appeal, affirmed. Wood appeals to this court, and we affirm.

### Facts

The material facts are not in dispute. Wood's accountant applied for and received two extensions of time for the filing of his 1982 federal income tax return. The first extension moved the filing deadline from April 15, 1983, to August 15, 1983. The second extended the time for filing to October 15, 1983. Wood filed his return on October 7, 1983.

On October 10, 1986, Wood filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101–1103 (1979). The Internal Revenue Service ("IRS") subsequently filed a proof of claim against the bankruptcy estate in the total amount of $174,741.91, including an unsecured claim for taxes, penalties, and interest of $83,-040.10 for the year 1982.

Wood initiated a proceeding in the bankruptcy court to determine, *inter alia,* the dischargeability of his federal income tax liability for the year 1982. The United States contested dischargeability. Wood responded to the Government's contest, arguing that the discharge provisions of the Bankruptcy Code pertaining to federal in-

come tax liabilities, specifically sections 523(a)(1) and 507(a)(7)(A), create disparate classes of debtors and that the classes established are irrational, thereby depriving Wood of his rights to substantive due process and equal protection of the laws in violation of the Fifth Amendment to the United States Constitution. Wood further contended that the classifications violate the Bankruptcy Clause of the United States Constitution, *see* U.S. Const. art. I, § 8, cl. 4, by effecting a nonuniform application of the federal bankruptcy laws and denying Wood equal access to the bankruptcy courts.

Section 523 of the Bankruptcy Code excepts several types of debts from the general discharge granted by section 727 of the Code. Section 523 excepts certain unsecured tax claims of "governmental units" that are granted a priority in distribution by section 507(a)(7)(A) and for which a return is last due, including extensions, within three years before the date on which the petition in bankruptcy is filed.[1] If the tax return is filed late, without an extension, the tax is dischargeable the later of three years after the last due date, including extensions, or two years after the filing date. Because the last date for filing Wood's 1982 tax return was October 15, 1983, and Wood filed his bankruptcy petition on October 10, 1986, Wood's 1982 liability, to the extent that the Government's

claim was unsecured, was excepted from discharge under section 523(a)(1).

Wood does not challenge the conclusion that under the literal reading of section 523(a)(1), the Government's unsecured claim to his 1982 tax liability is nondischargeable. Rather, he attacks that result on the basis that section 523(a)(1), when combined with section 507(a)(7)(A), creates two disparate classes of debtors. The first class consists of taxpayers who file their tax returns late but pursuant to valid extensions and whose tax liability under those sections is not dischargeable until three years from the date the return was due, including extensions. The second class consists of taxpayers who file their returns late, without an extension, and whose tax liability is dischargeable three years from the date on which the return was due.

To illustrate the alleged unconstitutionality of the relevant provisions of the Bankruptcy Code, Wood hypothesizes two taxpayers: the one, like Wood, obtained valid extensions for filing until October 15, 1983; the second one obtained no extensions. Wood observes that if both taxpayers filed their 1982 returns after April 15, 1983, but before October 15, 1983, the second taxpayer's liability would be dischargeable three years after the April 15, 1983, due date. The liability of the first taxpayer, however,

---

1. Under 11 U.S.C. § 523(a)(1), an individual debtor's liabilities for certain taxes are excepted from the section 727 discharge. Specifically, section 523(a)(1)(A) provides as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt
> (1) for a tax ...
> (A) of the kind and for the periods specified in section 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;
> (B) with respect to which a return, if required—
> (i) was not filed; or
> (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or
> (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax[.]

11 U.S.C. § 523(a)(1) (1979 & Supp.1988).

Accordingly, taxes that are entitled to priority of payment under section 507(a)(7) are not dischargeable.

The taxes involved in this case were "of the kind and for the periods specified" in section 507(a)(7). In pertinent part, section 507 provides as follows:

> (a) The following expenses and claims have the priority in the following order:
> \*   \*   \*   \*   \*   \*
> (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
> (A) a tax on or measured by income or gross receipts—
> (i) for a taxable year ending on or before the date of filing of the petition for which a return, if required, if last due, including extensions, after three years before the date of filing of the petition[.]

11 U.S.C. § 507(a)(7)(A)(i) (Supp.1988).

would not be dischargeable until three years after October 15, 1983, the due date under the extensions for filing. Because of the "including extensions" language of section 507(a)(7)(A), then, the taxpayer who filed the delinquent return could file a bankruptcy petition and receive a discharge from federal income tax liability up to six months earlier than the taxpayer who filed a return pursuant to valid extensions.[2]

The bankruptcy court held that Wood's tax liability for 1982 was not dischargeable, rejecting his constitutional challenge to the discharge statutes. The court also rejected Wood's contention that section 523 violates the Bankruptcy Clause of the United States Constitution. On appeal, the district court affirmed the bankruptcy court's ruling. From the district court's adverse ruling, Wood initiated this appeal. Because the issues presented involve questions of law, review is plenary.

## Discussion

We must determine whether the classifications created by 11 U.S.C. §§ 523(a)(1) and 507(a)(7)(A): (1) unconstitutionally deny Wood's right of equal protection under the Fifth Amendment to the United States Constitution; (2) unconstitutionally deny Wood's right of substantive due process under the Fifth Amendment to the United States Constitution; or, (3) violate the Bankruptcy Clause of the United States Constitution by effecting a nonuniform application of federal bankruptcy laws and denying Wood equal access to the bankruptcy courts. The issues presented are discussed *seriatim.*

### A. Equal Protection

■ Congressional legislation enjoys a presumption of constitutionality. *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 14, 96 S.Ct. 2882, 2891–92, 49 L.Ed.2d 752 (1976). The party contending that the statute, or a portion thereof, is unconstitutional has the burden of overcoming that presumption. *Id.*

The Supreme Court has articulated various standards for evaluating claims that a particular piece of legislation, as applied, violates an individual's rights of substantive due process and equal protection under the Fifth Amendment.[3] Whether a particular standard will govern in a case depends upon the nature of the challenge and of the legislation involved. The Court has held that bankruptcy legislation is social and economic in nature. *United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973). When a piece of social or economic legislation is challenged on equal protection grounds, the legislation generally will be upheld if the classifications established by the legislation rationally relate to a legitimate government interest. *Kras,* 409 U.S. 434, 93 S.Ct. at 631. Under the "rational relationship" test, a court reviewing the constitutionality of a classification only may strike down the classification if the classification is without *any* reasonable justification. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). Thus, even if in a particular case the classification, as applied, appears to discriminate irrationally, the classification must be upheld if "any set of facts reasonably may be

---

**2.** Section 6081(a) of the Internal Revenue Code provides that the Secretary of the Treasury "may grant a reasonable extension of time for filing any return ... required by this title or by regulations." Except in the case of taxpayers who are abroad, no such extension shall exceed six months. I.R.C. § 6081(a) (1980). Thus, under the statutes involved in this case, the taxpayer who files a delinquent return can receive a discharge of his tax liabilities only up to six months earlier than one who files a return pursuant to valid extensions, since extensions for filing of a domestic taxpayer's return in no case may postpone filing more than six months.

**3.** Although the Fifth Amendment does not contain an equal protection clause, "it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" *Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964) (*quoting Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). The Supreme Court's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975).

conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

Wood has failed to demonstrate that the statutes involved are unconstitutional. The statutes do create two classes of debtors, and the classes established do rationally relate to a legitimate government interest. Sections 523(a)(1) and 507(a)(7)(A) reflect a two-fold government interest. First, the Government has an interest in decreasing the number of delinquent income tax filers, and the sections encourage a prompt investigation of such filers. Presumably, the vigorous pursuit of delinquent filers, combined with substantial civil and criminal penalties, discourages the late filing of returns. Second, and perhaps more importantly, the Government has an interest in maximizing the period allowed for auditing returns and collecting taxes. In establishing the priority and discharge provisions of the Code, Congress recognized the IRS' status as an involuntary creditor and need to have a reasonable period of time within which to collect taxes. *See* Sen.Rep. No. 989, 95th Cong., 2d Sess. 14, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5800; H.R.Rep. No. 595, 95th Cong., 2d Sess. 190, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 6150. The three-year time period embodied in section 507(a)(7)(A) reflects the "reasonable" period of time the IRS is allotted to audit the return and collect taxes.

If a debtor files a delinquent return, the IRS' three-year period for auditing that return and collecting taxes may be diminished substantially. The delinquency of a return should raise a "red flag" to the IRS and encourage the IRS to pursue the delinquent filer vigorously in an effort to secure a filing and maximize the period for auditing the return and collecting taxes. Sections 523(a)(1) and 507(a)(7)(A) encourage such expedient action.

By granting a taxpayer an extension for filing, however, the IRS is permitted to forego efforts to collect taxes until the extension expires. No "red flags" are raised; instead, the IRS is accorded a measure of security. The "including extensions" language thus represents an equitable trade-off: The taxpayer receives a longer period of time within which to file his return and is able to avoid civil and criminal penalties attendant to the "delinquent" status, and the IRS is assured of a specific time period within which to audit the taxpayer's return and to collect taxes. The trade-off is entirely appropriate, particularly considering that the taxpayer absolutely controls the time of filing.

The IRS submits, and the court agrees, that the relevant statutes create an "equitable incentive structure" that encourages the IRS to pursue tax evaders diligently while additionally securing for the IRS adequate time to review legally-filed returns. These purposes are plausible, and sections 523(a)(1) and 507(a)(7)(A) rationally advance them.

### B. *Substantive Due Process*

■ The standard for evaluating substantive due process challenges to social and economic legislation is virtually identical to the "rational relationship" test for evaluating equal protection claims. Legislation such as that involved herein generally will be upheld against a substantive due process attack unless the legislation "manifests a patently arbitrary classification, utterly lacking in rational justification." *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). As with the "rational relationship" test, *any* plausible reason supporting Congress' action in enacting the suspect legislation satisfies the "rational basis" test. *Id.* at 612, 80 S.Ct. at 1373.

For the reasons discussed, a plausible reason does support the classifications established by sections 523(a)(1) and 507(a)(7)(A). Thus, the legislation does not violate Appellant's right of substantive due process.

### C. *Bankruptcy Clause*

Appellant contends that sections 523(a)(1) and 507(a)(7)(A) violate the Bankruptcy Clause by effecting a nonuniform application of bankruptcy laws and denying Appellant equal access to the counts. Appellant purports to engraft the equal protection guarantees into the Bankruptcy Clause. Such engineering, however, is inappropriate.

■ The Bankruptcy Clause vests Congress with the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States[.]" U.S. Const. art. I, § 8, cl. 4. The uniformity required by the Bankruptcy Clause, however, is geographical, not personal, *Hanover National Bank v. Moyses*, 186 U.S. 181, 188, 22 S.Ct. 857, 860, 46 L.Ed. 1113 (1902), and the Clause "neither recognizes nor grants individual rights." *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 926 n. 22 (5th Cir.1977). The Clause "is not a straitjacket that forbids Congress to distinguish among classes of debtors...." *Railway Labor Executives' Assn. v. Gibbons*, 455 U.S. 457, 469, 102 S.Ct. 1169, 1176, 71 L.Ed.2d 335 (1982). Instead, it only requires that bankruptcy laws apply uniformly among classes of debtors.

Wood also argues that the statutes involved deny him equal access to the courts. This assertion is frivolous, and does not warrant discussion.

### Conclusion

For the foregoing reasons, the decision of the district court hereby is AFFIRMED.