887 P.2d 747

Jose M. MARRUJO, Sr., individually and as personal representative of the Estate of Glen Marrujo, Sr., Plaintiff–Appellant,

v.

NEW MEXICO STATE HIGHWAY TRANSPORTATION DEPARTMENT, Defendant–Appellee.

No. 21530.

Supreme Court of New Mexico.

Nov. 3, 1994.

Aarons Law Firm, P.C., Stephen D. Aarons, Santa Fe, for appellant.

Miller, Stratvert, Torgerson & Schlenker, P.A., Robert C. Gutierrez, Virginia Anderman, Albuquerque, for appellee.

Sive, Paget & Riesel, P.C., Steven Barshov, New York City, Judith A. Olean, Santa Fe, for amicus curiae N.M. Self Insurers Fund and N.M. Mun. League.

## OPINION

FROST, Justice.

This case addresses the constitutionality of the New Mexico Notice of Claims Statute,

NMSA 1978, Section 41–4–16 (Repl. Pamp.1989), which requires those asserting a wrongful death claim against state or local public bodies to provide notice of the claim within six months of the injury.

The trial court upheld the constitutionality of the Notice of Claims Statute and dismissed the Plaintiffs' claim. We affirm.

## I. FACTS

On November 9, 1988, a vehicle occupied by Glen Marrujo, Sr. (Marrujo) collided with another vehicle on a curved section of State Road 94 near Mora, New Mexico. Marrujo moved the car partly off the road and began to repair the left rear wheel. A third vehicle rounded the curve and struck Marrujo who died the next day.

Within a few days of the accident the New Mexico State Highway and Transportation Department (Department) received two Uniform Accident Reports as well as several supplemental reports prepared by the State Police. Two years later on November 8, 1990—the final day of the statute of limitations for claims under the Tort Claims Act, NMSA 1978, Section 41–4–15 (Repl. Pamp.1989)—the family of Marrujo (Family) filed a wrongful death suit against the Department. The Family alleged that the Department negligently maintained the stretch of road where Marrujo was killed. Service was made on the Department on November 19, 1990. This was the first notice to the State that a claim was being made against the Department as a result of the accident.

The Department moved to dismiss, alleging that it had not received proper notice of the claim within six months after the accident as required by the New Mexico Notice of Claims Statute, Section 41–4–16(C). In reply, the Family alleged (among other concerns) that the Notice of Claims Statute violates the equal protection and due process provisions of the United States Constitution and Article II, Section 18 of the New Mexico Constitution. The trial court granted summary judgment to the Department because the Family had not satisfied the requirements of the Notice of Claims Statute.

The parties ask this Court to address four issues: (1) whether the constitutionality of the Notice of Claims Statute should be evaluated under a heightened scrutiny or rational basis standard of review; (2) whether this statute is unconstitutional on due process and equal protection grounds; (3) whether the Uniform Accident Reports filed with the Department constituted actual notice of the Family's wrongful death claim; and (4) whether further discovery by the Family would expose issues of material fact which would render summary judgment premature.

An amicus brief was filed in this Court by the New Mexico Municipal League and the New Mexico Self Insurers Fund. Upon review of the certification order by the Court of Appeals, the briefs, and the record, we affirm the district court's grant of summary judgment.

## II. STATUTE IN QUESTION

The Family challenges the constitutionality of Section 41–4–16(C) of the Tort Claims Act, NMSA 1978, Sections 41–4–1 to –29 (Repl. Pamp.1989 & Cum.Supp.1994), which requires that a notice of claim against the state for wrongful death be filed "within six months after the date of the occurrence of the injury which resulted in the death." They contrast this statute with the Wrongful Death Act which requires that claims against a private party who causes the wrongful death of another "be brought within three years after the cause of action accrues" where "[t]he cause of action accrues as of the date of death." NMSA 1978, § 41–2–2 (Repl. Pamp.1989). They claim the disparity between these two statutes violates their equal protection and due process rights under the Federal Constitution. The Family wants us to evaluate the constitutionality of this notice provision using a heightened scrutiny standard while the Department urges us to use a rational basis standard.

## III. THE HEIGHTENED SCRUTINY VERSUS THE RATIONAL BASIS STANDARD OF REVIEW

When dealing with a facial constitutional challenge of a statute, the legislation "enjoys a presumption of constitutionality."

*Wood v. United States (In re Wood)*, 866 F.2d 1367, 1370 (11th Cir.1989) (citing *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976)); *see also Espanola Hous. Auth. v. Atencio*, 90 N.M. 787, 788–89, 568 P.2d 1233, 1234–35 (1977). In evaluating a due process or equal protection claim under the Federal or State constitutions, the Court will apply one of three standards of review: strict scrutiny; intermediate scrutiny (also known as substantial, heightened, or high review); and minimal scrutiny (also known as the rational basis test). The same standards of review are used in analyzing both due process and equal protection guarantees. Due process, however, focuses on the validity of legislation as it equally burdens all persons in the exercise of a specific right. Equal protection, on the other hand, focuses on the validity of legislation that permits some individuals to exercise a specific right while denying it to others. John E. Nowak et al., *Constitutional Law* 423 (1983). We first must decide what interest is involved or to whom the interest belongs. This will determine the appropriate standard of review.

▬ Strict scrutiny applies when the violated interest is a fundamental personal right or civil liberty—such as first amendment rights, freedom of association, voting, interstate travel, privacy, and fairness in the deprivation of life, liberty or property—which the Constitution explicitly or implicitly guarantees. Nowak et al., *supra*, at 418 & n. 3, 460–61; *see* Laurence H. Tribe, *American Constitutional Law* § 16–7, at 1454 (2d ed. 1988). Strict scrutiny also applies under an equal protection analysis if the statute focuses upon inherently suspect classifications such as race, national origin, religion, or status as a resident alien. Nowak et al., *supra*, at 448–49; Tribe, *supra*, § 16–13, at 1465–66; *Garcia v. Albuquerque Pub. Schs. Bd. of Educ.*, 95 N.M. 391, 393, 622 P.2d 699, 701 (Ct.App.1980) (citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976)), *writ quashed*, 95 N.M. 426, 622 P.2d 1046 (1981). Under this analysis, the burden is placed upon the state to show that the restriction of a fundamental right or the delineation of suspect classes supports a compelling state interest, and that the legislation accomplishes its purposes by the least restrictive means. *Bernal v. Fainter*, 467 U.S. 216, 219, 104 S.Ct. 2312, 2315–16, 81 L.Ed.2d 175 (1984). Otherwise the statute will be invalidated. *See Richardson v. Carnegie Library Restaurant, Inc.*, 107 N.M. 688, 693, 763 P.2d 1153, 1158 (1988). Strict scrutiny is inappropriate in this case because Section 41–4–16(C) involves no fundamental right and does not focus upon an inherently suspect class in distributing benefits or burdens.

▬ The Family wishes us to impose an intermediate or heightened standard of review in evaluating Section 41–4–16. This level of scrutiny is triggered by two broad circumstances: Legislation that impinges upon an important—rather than fundamental—individual interest, and legislation which uses sensitive—rather than suspect—classifications. Tribe, *supra*, § 16–33, at 1610, 1613; *see Richardson*, 107 N.M. at 698, 763 P.2d at 1163. Classifications based upon gender, illegitimacy, and mental retardation are examples of such interests. Tribe, *supra*, § 16–33, at 1614; Nowak et al., *supra*, at 595; *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 451, 108 S.Ct. 2481, 2482–84, 101 L.Ed.2d 399 (1988). This level of evaluation is more sensitive to the "risks of injustice" than the rational basis standard and "yet less blind to the needs of governmental flexibility" than strict scrutiny. Tribe, *supra*, § 16–33, at 1610; *Richardson* 107 N.M. at 693, 763 P.2d at 1158. The burden is on the party maintaining the statute's validity—the state—to "prove that the classification is substantially related to an important governmental interest." *Trujillo v. City of Albuquerque*, 110 N.M. 621, 628, 798 P.2d 571, 578 (1990) (quoting *Richardson*, 107 N.M. at 695, 763 P.2d at 1160).

▬ The rational basis standard of review is triggered by "all other" interests: those that are not fundamental rights, suspect classifications, important individual interests, and sensitive classifications. This level of scrutiny applies in economic and social legislation, classifications based on property use, and business and personal activities that do not involve fundamental

rights. Nowak et al., *supra*, at 596–97. Underlying this standard is the traditional deference accorded by courts to the legislature's sense of "the general good." Tribe, *supra*, § 16–2, at 1440. Under this test, the burden is on the opponent of the legislation to prove that the law lacks a reasonable relationship to a legitimate governmental purpose. *Trujillo*, 110 N.M. at 628, 798 P.2d at 578. The opponent's burden is difficult because they must "demonstrate that the challenged legislation is clearly arbitrary and unreasonable, not just that it is possibly so." *Richardson*, 107 N.M. at 693, 763 P.2d at 1158. The court will uphold the statute if any state of facts can be discerned that will reasonably sustain the challenged classification. *Id.* at 693, 763 P.2d at 1158.

▮ The Family cites *Trujillo v. City of Albuquerque* as support for the claim in their Brief in Chief that "New Mexico applies the intermediate or heightened scrutiny test ... to equal protection attacks on its Torts Claims Act." The *Trujillo* case, however, deals not with the constitutionality of the notice of claims deadlines, but rather with damage caps on tort violations by the state. *Trujillo* remanded the case for a determination of the damage cap using the heightened scrutiny test. *Id.* at 631–32, 798 P.2d at 581–82. The Family's primary case on this issue is not on point. A cap puts a real limit on recovery by a class of more seriously injured tort victims. A notice statute need not be a bar to recovery by any tort victim. *See Jaramillo v. State*, 111 N.M. 722, 725, 809 P.2d 636, 639 (Ct.App.) ("Legally, [*Trujillo*] involve[s] not simply the right of access to the courts, but a constitutionally protected right of full recovery in tort that is one aspect of the general right of access to the courts."), *cert. denied*, 111 N.M. 416, 806 P.2d 65 (1991).

▮ A notice of claim is not a substantive right. *Atencio*, 90 N.M. at 789, 568 P.2d at 1235. Instead, it is analogous to a statute of limitations, *id.*, or to the statutory period for filing a notice of appeal. Rather than being a protected right, it is similar to the "mandatory preconditions to the exercise of jurisdiction" that we delineated in *Trujillo v. Serrano*, 117 N.M. 273, 277, 871 P.2d 369,

373 (1994) (emphasis omitted) (equivocal matters such as the timely filing of a notice of appeal are preconditions to jurisdiction rather than absolute jurisdictional requirements). A Notice of Claims Statute does not preclude or guarantee access to the courts. It merely specifies the circumstances under which a plaintiff can exercise the substantive right of access to the courts. Under a damage cap there is a class of tort victims that would never receive full recovery, while under the Notice of Claims deadline anyone who petitions on time has the opportunity to achieve full recovery. *See Coleman v. United Eng'rs & Constructors*, 118 N.M. 47, 50–51, 878 P.2d 996, 999–1000 (1994) (distinguishing between the intermediate scrutiny of a torts damage cap and rational basis scrutiny of a notice provision).

Numerous New Mexico cases have applied the rational relationship test when evaluating constitutional challenges to notice statutes and statutes of limitation. An equal protection challenge was brought in *Espanola Housing Authority v. Atencio* against NMSA 1953, Section 23–1–23, which required that negligence claims against a city, town, or village be commenced within one year of the injury. *Atencio*, 90 N.M. at 788, 568 P.2d at 1234. This law was contrasted by the plaintiffs to NMSA 1953, Section 23–1–8, which provided three years for tort actions against a county or the state. *Id.* In upholding the statute's constitutionality, this Court used a rational relationship test. *Id.* at 790, 568 P.2d at 1236.

*Sena School Bus Co. v. Board of Education*, 101 N.M. 26, 677 P.2d 639 (Ct.App. 1984), concerned NMSA 1978, Section 37–1–23, which was challenged on equal protection grounds. That statute placed a two-year statute of limitations on a claim derived from a written contract with government entities. This was compared by the plaintiffs with Section 37–1–4, which permitted four years to sue private entities for breach of unwritten contracts, and Section 37–1–3(A), which allowed six years to bring a claim against private entities for breach of written contracts. *Id.* at 28–29, 677 P.2d at 641–42. The test used by the Court of Appeals was "whether the classification is reasonable."

*Id.* at 29, 677 P.2d at 642 (citing *Atencio,* 90 N.M. at 789, 568 P.2d at 1235).

The 1980 case *Garcia v. Albuquerque Public Schools Board of Education* challenged NMSA 1978, Sections 41–4–1 to –12, which at that time constituted the entire Tort Claims Act. Suit was brought on equal protection grounds because a tort claim against a teacher who allegedly struck a student was not covered by one of the eight exceptions to governmental immunity found in Sections 41–4–5 to –12 of the Act:

> 1) the operation or maintenance of motor vehicles, aircraft, and watercraft; 2) the operation or maintenance of any building, public park, machinery, equipment or furnishings; 3) the operation of airports; 4) the operation of certain public utilities and services; 5) the operation of certain medical facilities; 6) health care services; 7) the maintenance and existence of highways, streets and certain appurtenances; 8) certain unlawful acts of law enforcement officers.

*Garcia,* 95 N.M. at 393, 622 P.2d at 701. Applying a rational basis standard The Court of Appeals found the Act did not violate the equal protection clauses of the New Mexico and United States Constitutions. The Court rejected strict scrutiny stating that "the classification adopted offends no fundamental rights or suspect classes and there are rational bases for the reinstatement of partial sovereign immunity." *Id.* at 394, 622 P.2d at 702. The rational relationship test was also applied by this Court in *Jaramillo,* 111 N.M. at 725, 809 P.2d at 639, in a constitutional challenge to the Tort Claims Act notice statute NMSA 1978, Section 41–4–15(A) (Repl. Pamp.1989), which allowed two years to file a claim by those rendered incompetent by a government entity.

We find instructive the Tenth Circuit case of *Day v. Memorial Hosp. of Guymon,* 844 F.2d 728 (10th Cir.1988). There the court interpreted the notice provision of the Oklahoma Political Subdivision Tort Claims Act: "A claim against a political subdivision shall be forever barred unless notice thereof is filed with the clerk of the governing body of the political subdivision within one hundred twenty (120) days after a loss occurs." Okla.

Stat. tit. 51, § 156(B) (1979). The plaintiff brought an equal protection claim because, while "victims of government negligence must give notice of their tort claim ... [t]here is no such requirement for victims of 'private' negligence." *Day,* 844 F.2d at 730. The court rejected strict scrutiny and adopted minimal scrutiny "[b]ecause the present case involves neither a suspect class nor a fundamental right, we examine the statute only to see if it rationally furthers a legitimate state interest." *Id.* at 731 (citing *Lacey v. Bekaert Steel Wire Corp.,* 799 F.2d 434, 436 (8th Cir.1986)).

■ The classification in the Notice of Claims Statute before us is not directed at an important individual interest. In fact the classification is not directed at the plaintiffs at all. It merely classifies *defendants* and not plaintiffs, as either private or public. *Jaramillo,* 111 N.M. at 725, 809 P.2d at 639. Intermediate scrutiny of Section 41–4–16 is not supported by New Mexico or federal case law. We conclude that the rational relationship test is the appropriate standard for evaluating the constitutionality of the New Mexico Notice of Claims Statute.

## IV. THE CONSTITUTIONALITY OF THE NOTICE OF CLAIMS STATUTE

The Family claims that the New Mexico Notice of Claims Statute is unconstitutional because it violates their equal protection and due process rights. Their challenge turns on the alleged unconstitutional classification between public and private tortfeasors.

The due process claim of the Family is never explained and it is unclear what they wish us to evaluate. They may be advancing a substantive due process claim that their cause of action is a property right, somewhat like the claim of the plaintiffs in *Sena,* 101 N.M. at 29, 677 P.2d at 642: "Plaintiffs allege that subsection (A) of Section 37–1–23 which grants governmental entities immunity from all contract actions but those on a 'valid written contract' deprives them of property, namely their cause of action on the 1978 oral contract, without due process." *See generally* Nowak et al., *supra,* at 425–96 (discussing

substantive due process). However, the Family makes no assertion that the wrongful death claim is a property right. On the other hand, they may be advancing a procedural due process argument like the one advanced in *Jaramillo*, 111 N.M. at 727, 809 P.2d at 640, that the notice statute violates the Family's "rights to due process of law because it requires filing the claim within an unreasonable period of time." *See generally* Nowak et al., *supra*, at 526–81 (discussing procedural due process). However, no express argument was advanced that the six month notice provision of Section 41–4–16(C) is unreasonable. Since no clear due process argument is raised, we will simply restate the idea that "[a]nalysis under the equal protection clause of the fourteenth amendment is identical to that used under the due process clauses." Nowak et al., *supra*, at 422; *cf. Wood*, 866 F.2d at 1371.

■■■■ Thus, in reviewing the constitutionality of the Notice of Claim statute, we must find that the legislation is rationally related to a legitimate state interest. The plaintiff bears the burden of showing that this rational relationship does not exist. *Jaramillo*, 111 N.M. at 725–26, 809 P.2d at 639–40 (citing *Richardson*, 107 N.M. at 695, ·763 P.2d at 1160). The Department and the amicus offered a multitude of state interests in distinguishing between public and private tortfeasors. Though challenges to these interests by the Family have been minimal, we note that, under the rational relationship test, even a single persuasive state interest may be sufficient to defeat a plaintiff's claim that equal protection has been denied. *See Sena*, 101 N.M. at 29, 677 P.2d at 642.

■■■ Many government interests are asserted by the Department and the amicus: They express concern that the public treasuries need to be protected, implying that uninsured parties will take advantage of extended notice to exploit the "deep pockets" of local or state governments. *See Garcia*, 95 N.M. at 394, 622 P.2d at 702 (citing Ruth L. Kovnat, *Torts: Sovereign and Governmental Immunity in New Mexico*, 6 N.M.L.Rev. 249, 262 (1976)). They point out that the likelihood of stale or unfounded claims is diminished. *Day*, 844 F.2d at 731. Prompt

notice encourages expeditious investigation of the accident by the government before evidence is destroyed or conditions change. *Reirdon v. Wilburton Bd. of Educ.*, 611 P.2d 239, 240 (Okla.1980). Costs can be reduced by the "quick and amicable settlement of meritorious claims," and the government can also take advantage of the claim to obtain knowledge of defects in order to make the necessary corrections. *Id.* Smaller municipalities who are self-insured are especially limited in their ability to raise money to meet the expense of tort claims, and notice allows these entities to budget for such claims. *See Atencio*, 90 N.M. at 790, 568 P.2d at 1236. Considering factors such as these, the notice requirement is not an irrational means of achieving a legitimate state objective. *Day*, 844 F.2d at 731 (citing *Oquendo v. Insurance Co. of Puerto Rico*, 388 F.Supp. 1030, 1033–36 (D.P.R.1974)).

■■■ Governmental entities are different from private parties and this distinction was acknowledged in the legislative declaration setting forth the purpose of the Tort Claims Act:

The legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity. On the other hand, the legislature recognizes that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done. Consequently, it is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act [41–4–1 to 41–4–27 NMSA 1978] and in accordance with the principles established in that act.

Section 41–4–2(A). The legislature never intended government and private tortfeasors to receive identical treatment. The liabilities of the private tortfeasor in no way compare with the potential liabilities of the Department for the multitude of daily injuries and deaths on the State's highways. The duty of

care of a single motorist is not analogous to the all but impossible task of monitoring the countless conditions that determine the safety of the state highways. *Budahl v. Gordon & David Assoc.*, 287 N.W.2d 489, 492–93 (S.D.1980) (citing Luke K. Cooperrider, *The Court, The Legislature, and Governmental Tort Liability in Michigan*, 72 Mich.L.Rev. 187, 272 (1973)). The right to sue the government is a statutory right and the legislature can reasonably restrict that right. *Day*, 844 F.2d at 732. Perhaps the legislature could have drafted a bill that the Family would have found more compassionate, but as drafted, the statute easily survives a facial constitutional attack.

## V. THE UNIFORM ACCIDENT RE-PORTS WERE NOT ACTUAL NO-TICE OF THE FAMILY'S WRONG-FUL DEATH CLAIM

▮ The Notice of Claims Statute requires that

[e]very person who claims damages from the state or any local public body under the Tort Claims Act ... shall cause to be presented ... to the administrative head of any ... local public body for claims against such local public body ... a written notice stating the time, place and circumstances of the loss or injury.

Section 41–4–16(A). The statute goes on to explain that the notice need not only be the written notice just described, but can be "actual notice of the occurrence." Section 41–4–16(B). The Family claims that, although no official written notice was filed with the Department under Section 41–4–16(A), the Department received "actual notice" from the two Uniform Accident Reports filed by the police. The reports, however, offered no suggestion that a tort had occurred or that a lawsuit was impending. There was nothing in the reports to distinguish this case from the many other traffic fatalities in New Mexico in which the State is blameless and the driver or a private party is completely at fault. The reports served a purely statistical function.

▮ This issue was addressed by this Court in *New Mexico State Highway Commission v. Ferguson*, 98 N.M. 680, 652 P.2d 230 (1982). As in this case, the Court was asked to decide "whether an accident report prepared by the New Mexico State Police constitutes actual notice within the meaning of Section 41–4–16(B) to the State and to all state agencies." *Id.* at 681, 652 P.2d at 231. We held that it did not. Mere notice of an accident will not necessarily put the government entity on notice that it may become the defendant in a lawsuit. *Id.*

*City of Las Cruces v. Garcia*, 102 N.M. 25, 690 P.2d 1019 (1984), also discussed "whether the City traffic department's receipt of a copy of an accident report in this case is 'actual notice' under [Section 41–4–16 of] the Tort Claims Act." *Id.* at 26, 690 P.2d at 1020. As the Court stated:

We agree with the Court of Appeals that under some circumstances, a police or other report could serve as actual notice under Subsection 41–4–16(B), but only where the report contains information which puts the governmental entity allegedly at fault on notice that there is a claim against it.

*Id.* at 27, 690 P.2d at 1021 (emphasis omitted). No persuasive arguments were advanced by the Family to suggest that the police reports fell within any exceptions implied by *Las Cruces*. *See also Powell v. N.M. State Highway & Transp. Dep't*, 117 N.M. 415, 418–19, 872 P.2d 388, 391–92 (Ct. App.) (no actual notice in police report which described penetration of vehicle by guardrail but made no connection between the guardrail and the cause of plaintiff's injuries), *cert. denied*, 117 N.M. 524, 873 P.2d 270 (1994) (No. 22,034).

In contrast is *Smith v. State ex rel. New Mexico Department of Parks and Recreation*, 106 N.M. 368, 371, 743 P.2d 124, 127 (Ct.App.1987), in which the plaintiff claimed to have spoken to various officials in the State Parks and Recreation Commission informing them of the likelihood of a lawsuit motivated by drownings in a boating accident in a state park. The Court of Appeals reversed summary judgment and remanded the case because sufficient evidence was presented to suggest actual notice. *Id.* at 372, 743 P.2d at 128. However, in the case at hand, it is undisputed that there was no direct contact between the Family and the Depart-

ment. The Family raises no issue of material fact comparable to those raised in *Smith.*

## VI. FURTHER DISCOVERY WOULD NOT OVERCOME THE FAILURE TO COMPLY WITH THE REQUIREMENTS OF THE NOTICE OF CLAIMS STATUTE

The Family made discovery requests which it alleges were never addressed. Because they did not obtain essential bits of evidence, they claim summary judgment was premature. The evidence sought included photographs which the police officer noted as being enclosed with the "Supplemental Diagram/Narrative" of the accident report. Also the Family made a motion to compel disclosure of the frequency of accidents at the scene, any further investigations by the Department of this particular accident, whether improvements to this stretch of highway were motivated by substandard conditions on the road, and whether the improvements were inspired by "actual notice" in the two accident reports filed by police.

 However, since nothing in the police reports gives actual notice that a tort had occurred, the claim that improvements to the highway were inspired by those reports seems speculative if not specious. *See Cantrell v. W & C Contracting Co.,* 112 N.M. 609, 614, 817 P.2d 1251, 1256 (Ct.App.), *cert. denied,* 112 N.M. 440, 816 P.2d 509 (1991). The Family does not establish the materiality of the evidence they seek; they do not explain why this information would be likely to help overcome the failure to comply with the notice of claims deadline.

> The statutory requirement necessitating a finding that there is "good cause" for undertaking discovery and that the evidence sought to be obtained "will probably be material" cannot properly be entered in general, without identifying the specific discovery sought or individuals or entities to be deposed, and a determination by the court that the specific discovery or deposition requested will probably be material to the cause.

*Soliz v. Bright Star Enters.,* 104 N.M. 202, 204, 718 P.2d 1350, 1352 (Ct.App.), *cert. de-*

*nied,* 104 N.M. 191, 718 P.2d 701 (1986). Given the fact that the Family has not complied with the basic requirements of the Notice of Claims Statute, this discovery argument seems more like a "fishing expedition" than a focused request for probative relevant evidence. *See Cantrell,* 112 N.M. at 614, 817 P.2d at 1256.

## VII. CONCLUSION

For the foregoing reasons we affirm the decision of the trial court.

**IT IS SO ORDERED.**

BACA, C.J., and FRANCHINI, J., concur.